UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61805-CIV-COHN

RANDY NATOUR and RICKY SAKHLEH,

    Plaintiffs,

v.

BAHLAWAN, TAREK, d/b/a Sistrunk Meat
Markets, a Florida Profit Corporation,
TAREK BAHLAWAN, individually,

    Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR MISCELLANEOUS RELIEF**

Defendants, Bahlawan, Tarek and Tarek Bahlawan, by and through their undersigned attorneys, file this Response, and state:

**BACKGROUND**

This was a FLSA case concerning which the Court approved the settlement agreement in December 2018. There were no other causes of action brought other than for overtime. Thus, there were no causes of action to force an information return to be issued or for other relief not provided for in the FLSA. This case is closed and should not be reopened, nor does the motion seek to do that. [D.E. 18] (which is the Court's Final Order stating that the Joint Motion for Court Approval of Settlement Agreement is GRANTED and that the clerk is directed to CLOSE the case). It is now as if the Plaintiffs seek leave to amend their Complaint to add new causes of action and new relief which is not provided for the in the FLSA and the Court should no grant that relief. Also, the Plaintiffs are represented by counsel who have not withdrawn, and thus the filing by them *pro se* should be viewed as the unauthorized nullity that it is. This Court has no jurisdiction to reopen this matter, because it did not expressly retain jurisdiction for any purpose, and particularly since there was no retention of jurisdiction in the Order based on a previously-filed request by the parties to in fact retain jurisdiction

for a specific purpose. *Anago Franchising, Inc. v. Shaz, L.L.C.*, 677 F.3d 1272 (11th Cir. 2012) (citing *Kokkonen v. Guardian Life Insurance of America,* 511 U.S. 375 (1994)). If the Court does reopen the case over the objection of the Defendants, none of the relief that the Plaintiffs seek should be granted for the reasons set forth below in detail.

The Defendants are comprised of one individual named Tarek Bahlawan. "Bahlawan, Tarek" is not a Florida corporation nor did he do business as Sistrunk Meat Markets (it is Mr. Bahlawan's name with the last name first and the first name last). Thus, there was no business entity sued. Nevertheless, the courts have construed who is an employer and thus potentially liable for overtime extremely broadly.[1] To that end, business owners and/or managers are often personally or individually liable for overtime and thus putative employees (though not the actual employer) along with the business entity or actual employer. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). Mr. Bahlawan was not the actual employer (an entity called Taro II, Inc. was) and thus has no duty in his individual capacity to pay payroll taxes, FICA taxes, or issue a W-2, for 2019 or 2020.

The settlement agreement did not state that payroll taxes or FICA taxes would be withheld or that W-2s would be issued (because the corporate employer that handles all of that was not sued), as follows:

> 4. **Consideration**. In consideration for signing this Agreement and General Release and compliance with the promises made herein, Defendants agree to pay to Plaintiffs and her counsel the total sum of _____ in full and final settlement and resolution of all claims made by Plaintiffs as follows (Plaintiffs receives _____) and the law firm receives (_____):

---

[1] The FLSA creates a private right of action against any "employer" who violates its minimum-wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)). Based on this broad definition, a supervisor has potential individual liability.

  a. On or before January 10, 2019, assuming the Court has approved the settlement, _____ of the settlement proceeds shall be paid to Plaintiffs and, allocated as follows:

 i. Randy Natour will receive _____ in consideration of the wage and hour claims made by Plaintiffs, including but not limited to overtime (_____) and liquidated damages (_____).

 ii. Ricky Sakleh will receive _____ in consideration of the wage and hour claims made by Plaintiffs, including but not limited to overtime (_____) and liquidated damages (_____).

  b. On or before February 10, 2019, assuming the Court has approved the settlement, _____ of the settlement proceeds shall be paid to Plaintiffs and, allocated as follows:

 i. Randy Natour will receive _____ in consideration of the wage and hour claims made by Plaintiffs, including but not limited to overtime (_____) and liquidated damages (_____).

 ii. Ricky Sakleh will receive _____ in consideration of the wage and hour claims made by Plaintiffs, including but not limited to overtime (_____) and liquidated damages (_____).

  c. On or before March 31, 2019, the law firm of Celler Legal, P.A. will receive _____ in consideration of claims made by Plaintiffs and in this case, including but not limited to attorneys' fees, costs, and disbursements.

  The Parties agree to file a Joint Motion for Court Approval of Settlement Agreement and will attach this agreement as Exhibit 1, which will be executed by counsel for Defendants, as more fully set forth in Paragraph 9 below.  Plaintiffs agree to hold Defendants harmless from any tax liability that may arise from the distribution of the funds from this Settlement, but the indemnity does not include any withholding due to be paid by the Defendants on these payments, if any.

(*Settlement Agreement*) (with redactions).  Accordingly, there was no agreement to "pay over FICA taxes" or to "provide W-2s".  Neither Defendant can issue or will issue a W-2 because, though there may be liability under the FLSA, the Defendants are not actual employers.

## MEMORANDUM OF LAW

### I. THE LEGAL STANDARDS REGARDING A DISTRICT COURT'S JURISDICTION ONCE A MATTER IS SETTLED.

The case *Anago Franchising, Inc. v. Shaz, L.L.C.*, 677 F.3d 1272 (11th Cir. 2012) is a virtual treatise on the issue presented by the Plaintiff's Motion.  There, the parties, in counterpoint to the

situation here, filed a joint stipulation of dismissal with prejudice, which contained extremely similar language to the one filed here with the exception that it, stated that it was filed pursuant to *both* Rule 41(a)(1) and Rule 41(a)(2) which are in fact mutually exclusive, and thus the parties had to have intended to file it pursuant to either one or the other, but not both and there was a statement that the court was to retain jurisdiction to enforce the settlement agreement.  Here, of course, in lieu of a stipulation, there was a joint motion for court approval of a settlement agreement.  The final order becomes effective upon filing unless it explicitly conditions its effectiveness on a subsequent occurrence. District courts need not and may not take action after the final order becomes effective because the stipulation dismisses the case and divests the district court of jurisdiction. *Id.* at 1278.

In *Anago Franchising*, the court framed the issue as follows:  "We must now determine if the Stipulation filed below was effective upon filing and if so, whether the district court properly retained jurisdiction to enforce the Settlement Agreement."  The court then explicitly held that federal courts do not have authority to retain jurisdiction over matters that are settled (even if the court had jurisdiction over the underlying matter), as follows:

> In *Kokkonen,* the Supreme Court recognized that the enforcement of a settlement agreement falls outside of the scope of ancillary jurisdiction of the federal courts, even when the court had jurisdiction to hear the underlying case. 511 U.S. at 379–80, 114 S.Ct. at 1676.  The Supreme Court reasoned that a district court could retain jurisdiction to enforce a settlement agreement with consent of the parties and of the court, provided the district court issues an order requiring compliance with the settlement agreement. *Id.* at 381, 114 S.Ct. at 1677.  In that case, non-compliance would be a violation of a court order and the district court could use its ancillary jurisdiction to enforce its orders (and by extension enforce the settlement agreement). *Id.* The Supreme Court stated that a district court could require compliance by either making the settlement agreement part of the court order by a separate provision "retaining jurisdiction" or by incorporating the terms of the agreement into the order itself. *Id.* at 381, 114 S.Ct. at 1677.
>
> Underlying *Kokkonen* is the well-established proposition that jurisdiction cannot exist by mere consent of the parties. *See, e.g., Eagerton v. Valuations, Inc.,* 698 F.2d 1115, 1118 (11th Cir. 1983).  To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough. *See SmallBizPros* 618 F.3d at 464 n.4 (speculating that a situation might arise in which a district court may lack jurisdiction to enforce a settlement agreement because it issued no order retaining jurisdiction even though the parties expressly

4

provide for ancillary jurisdiction in their stipulation for dismissal). The Supreme Court stated that when dismissal is pursuant to Rule 41(a)(1)(A)(ii), the district court is "authorized to embody the settlement contract in its dismissal order . . . if the parties agree." *Kokkonen,* 511 U.S. at 381–82, 114 S.Ct. at 1677. In *Chmielarz,* this court's first interpretation of *Kokkonen,* we did not detail the methods by which a district court could retain jurisdiction. We did note, however, that the district court entered an order of dismissal following the filing of a stipulation of dismissal and that the court's dismissal order sufficiently adopted the settlement agreement to retain jurisdiction. 289 F.3d at 1318, 1320–21.

### C. Reconciling Rule 41(a)(1)(A)(ii) and *Kokkonen*

Our Circuit has not yet decided whether a district court order entered after the filing of a Rule 41(a)(1)(A)(ii) stipulation can have any effect. In *Kokkonen,* the Supreme Court stated that in the context of a

> Rule 41(a)(1)[ (A) ](ii) [dismissal] (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) ... the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

511 U.S. at 381–82, 114 S.Ct. at 1677. This language creates a tension between the self-executing nature of a stipulation of dismissal which strips the district court of jurisdiction to issue orders and the Supreme Court's allowance of a postdismissal order to have the effect of retaining jurisdiction. The Seventh Circuit resolved this tension by finding that *Kokkonen* allows the district court to "take certain postdismissal action in furtherance of its ancillary jurisdiction" despite the fact that generally a Rule 41(a)(1)(A)(ii) stipulation divests the court of jurisdiction. *Bond v. Utreras,* 585 F.3d 1061, 1078 (7th Cir. 2009). Instead of finding an exception, the Fifth Circuit has resolved this issue by focusing on the mechanics of Rule 41 and allowing parties to make the effectiveness of their stipulation contingent on action by the district court. *SmallBizPros,* 618 F.3d at 463. Specifically, the Fifth Circuit explains that the district court can retain jurisdiction if "(i) all of the requirements for retaining jurisdiction [are] met at the time of filing, or (ii) the filing's effectiveness [is] contingent upon a future act (such as the district court issuing an order retaining jurisdiction)." *Id.*

We agree with the Fifth Circuit that a district court cannot retain jurisdiction by issuing a postdismissal order to that effect. A district court loses all power over determinations of the merits of a case when it is voluntarily dismissed. *Id.* In the context of a Rule 41(a)(1)(A)(ii)dismissal, we understand the Supreme Court's statement that "the [district] court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree" to mean that the parties must agree to the district court's order retaining jurisdiction, not that the district court may enter a

5

dismissal order when it would otherwise lack jurisdiction to do so. *Kokkonen,* 511 U.S. at 381–82, 114 S.Ct. at 1677.

Similar to the Fifth Circuit, we read *Kokkonen* in light of the plain language of Rule 41(a)(1)(A)(ii) and understand that it allows a district court to retain jurisdiction through an order, even if the parties dismiss the case through use of Rule 41(a)(1)(A)(ii), so long as the parties agree to the retention of jurisdiction. Because a court has no power to enter orders after a Rule 41(a)(1)(A)(ii) stipulation becomes effective, however, the court must enter the order retaining jurisdiction before the stipulation becomes effective. We therefore find that for a district court to retain jurisdiction over a settlement agreement where the parties dismiss the case by filing a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii), either (1) the district court must issue the order retaining jurisdiction under *Kokkonen* prior to the filing of the stipulation, or (2) the parties must condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction.

This is not inconsistent with our interpretation of *Kokkonen* in *Chmielarz.* There, the parties filed a stipulation of dismissal and "*requested* the Court to retain jurisdiction to enforce the terms of the Stipulation for Settlement." *Chmielarz,* 289 F.3d at 1318 (emphasis added) (internal quotation marks omitted). Pursuant to that request, the district court entered an order of dismissal which specifically "approved, adopted and ratified the Stipulation of Voluntary Dismissal with Prejudice, dismissed the case with prejudice, and expressly retained jurisdiction solely for the purpose of enforcing the Settlement Agreement." *Id.* (alteration and internal quotation marks omitted). Thus, the court issued its order because the stipulation requested it and by its nature required it.

In this case, the parties purported to retain jurisdiction by stating in their Stipulation that "[a]ll parties agree that the Supreme Court shall reserve jurisdiction to enforce the settlement between the parties pursuant to the terms contained therein." Unlike the stipulation in *Chmielarz,* this Stipulation makes no request of the district court; the parties seek to extend jurisdiction by agreement only. It is undoubtedly true that all parties must consent to the retention of jurisdiction over the enforcement of a settlement agreement if the case is dismissed by stipulation of all parties, but that agreement alone is not sufficient. *See Kokkonen,* 511 U.S. at 381, 114 S.Ct. at 1677. The district court must also issue an order specifically retaining jurisdiction in accordance with *Kokkonen* because ancillary jurisdiction allows a district court to effectuate its orders, not to enforce stipulations. *See Kokkonen,* 511 U.S. at 380–81, 114 S.Ct. at 1676–77. The district court did not retain jurisdiction to enforce the Settlement Agreement here because the court issued no such order before the case was dismissed and the stipulation was not conditioned by the entry of an order retaining jurisdiction.

Our decision does not leave the parties without a remedy—they may seek to enforce the settlement agreement in state court. *Kokkonen,* 511 U.S. at 382, 114 S.Ct. at 1677 ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."). Settlement agreements are contracts and thus may be adjudicated in courts with jurisdiction over the contract. *See id.* at 378, 114 S.Ct. at 1675–76 ("Enforcement of [a] settlement agreement,

6

however, ... is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."). When the settlement agreement is not made part of a court order, it is merely a private contract arising out of a case in federal court and "ha[s] nothing to do with" the underlying case. *Id.* at 380, 114 S.Ct. at 1676. The contract does not require adjudication by the same court, and is too "remote from what courts require in order to perform their functions." *Id.*

### III. CONCLUSION

The underlying lawsuit was dismissed on March 2, 2009, when the Stipulation for Dismissal with Prejudice was filed in the district court pursuant to Rule 41(a)(1)(A)(ii). The Stipulation did not condition its effectiveness on the issuance of an order by the district court retaining jurisdiction, and the court did not issue such an order prior to the dismissal of the case. Therefore, the district court did not retain jurisdiction to enforce the Settlement Agreement.

Rule 41(a)(1)(A) is a useful tool in settling cases because it allows parties to dismiss an action without a court order. However, it must be used precisely to reach the desired result; ancillary jurisdiction does not allow a court to enforce a filed stipulation in the same way it allows a court to enforce its orders. *Cf. Kokkonen,* 511 U.S. at 380–81, 114 S.Ct. at 1676–77. Because the case was dismissed and jurisdiction was not retained, the district court did not have jurisdiction to consider the July 6 Motion to Compel, and we do not have jurisdiction to rule on the merits of that decision.

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1869). We therefore vacate the district court's ruling on the Motion to Compel and remand this case with instructions to dismiss for lack of jurisdiction.

*Anago Franchising, Inc. v. Shaz, L.L.C.*, 677 F.3d 1272 (11th Cir. 2012). Accordingly, the Motion should be denied on the ground the Court has no jurisdiction to enter any order at this point.

II. **THE COURT HAS NO JURISDICTION TO FORCE A PARTY TO ISSUE AN INFORMATION RETURN (A W-2 or a 1099), AND THIS RELIEF WAS NEVER SOUGHT IN THEIR COMPLAINT.**

The Plaintiffs seek to recover for the issuance of a tax lien, and seeks payment toward a percentage of payroll taxes (social security, Medicare, and Unemployment). A confluence of several judicial rubrics requires the conclusion that the host of relief sought by the Plaintiffs in the instant Motion has no merit, primarily because either the claims are completely preempted by other statutes or administrative frameworks or are barred from recovery under the FLSA. First, the only relief that is

available to a plaintiff suing on behalf of himself under the wage and hour provisions[2] of the FLSA (meaning that the Secretary of Labor has not brought suit on the plaintiff's behalf) is for 1) minimum wage (§ 206) and/or 2) overtime (§ 207). *Aguila v. Corporate Caterers II, Inc.*, 199 F. Supp. 3d 1358 (S.D. Fla. 2016), *aff'd*, -- Fed. Appx -- (11th Cir. 2017); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 22 (D. D.C. 2010).

Second, any equitable relief that a plaintiff seeks, like requests for information returns or FICA taxes for alleged violations arising out of the FLSA, are barred, as noted by *Aguila*. *Powell v. State of Florida,* 132 F.3d 677 (11th Cir. 1998) (recognizing that "the right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor"). The basis for this ruling is based on statutory interpretation. *See* 29 U.S.C. §§ 211, 217 (from which the conclusion must be drawn that only the Secretary of Labor has authority to seek injunctive relief under the Act).[3]

Third, attempts to sue for the release of a tax lien, for payment of payroll taxes (Medicare, Social Security, and Unemployment) are barred by the doctrine of preemption—the FICA statute has preempted the field and does not allow for an individual to bring an action pursuant to it but rather requires the taxpayer bring a SS-8 action against the employer before the IRS. *McDonald v. So. Farm Bureau Life Ins. Co.,* 291 F.3d 718 (11th Cir. 2002) (disallowing claims under one federal statute because another federal statute provided for that relief); *Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004) (affirming dismissal of Federal Tort Claims Act suit as preempted by Title VII of the

---

[2] There are other provisions (though not many) of the FLSA that do not apply here, such as the prohibition on child labor. Under § 216(b), liquidated damages, attorneys' fees, and costs are also allowed as remedies for an overtime or minimum wage violation.

[3] For example, the failure to keep records is not allowed as an element of equitable or declaratory relief, and many courts have stricken such requests for relief in FLSA cases, because 29 U.S.C. § 211(c) (which requires that records of time worked be kept for employees) does not allow for an independent cause of action, and because only the Secretary of Labor can seek equitable relief under the statute. *See, e.g.*, *Elwell v. University Hosp. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) (holding precisely that); *Padurjan v. Aventura Limousine & Transportation Serv., Inc.*, 500 F. Supp. 2d 1359 (S.D. Fla. 2007) (dismissing all equitable claims under the FLSA).

Civil Rights Act of 1964); *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999) (holding a § 1983 claim was preempted by the FLSA).

Fourth, the fact that the claim is superfluous requires denial of the motion. *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) (stating that the plaintiff's were attempting to evade the FLSA's "unusually elaborate enforcement scheme" simply by suing for quantum meruit thereby attempting to render the FLSA's enforcement mandates superfluous, when they sought the same relief afforded by the FLSA in that count); *Padurjan v. Aventura Limousine & Transportation Serv., Inc.*, 500 F. Supp. 2d 1359 (S.D. Fla. 2007) (dismissing attempt to obtain a declaration that the plaintiff was an employee that could affect his tax status, and noting that the plaintiff cannot get around the fact that he has to prove as part of his case in chief that he was an employee).

Federal law can preempt and thus invalidate state law or other federal laws. Congressional power to preempt state law is derived from the Supremacy Clause of Article VI of the Constitution. U.S. Const. art. VI, cl. 2. The question of whether federal law preempts state law is one of congressional intent. *English v. General Elec. Co.,* 496 U.S. 72, 78-79 (1990).

"Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Aux Sable Liquid Prods. v. Murphy,* 526 F.3d 1028, 1033 (7th Cir. 2008) (citation omitted). Field preemption and conflict preemption are forms of implied preemption. *Gade v. Nat'l Solid Wastes Mgmt. Assoc.,* 505 U.S. 88, 98 (1992). Field preemption exists "when federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act." *Aux Sable Liquid Prods.,* 526 F.3d at 1033 (internal quotation and citations omitted). Conflict preemption "exists if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Aux Sable Liquid Prods.,* 526 F.3d at 1033 (internal quotation and citations omitted). "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal." *Int'l Paper Co. v. Ouellette,* 479

U.S. 481, 494 (1987). Regardless of the form of preemption in question, the "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Gade,* 505 U.S. at 98.

### A. Plaintiffs Seek to Enforce FICA Via An FLSA Action, When FICA Does Not Provide a Private Cause of Action Itself.

Private rights of action to enforce federal law must be created by Congress. *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979). The Plaintiffs implicitly contend that the FLSA allows for recovery in money damages for an alleged violation of FICA. The problem with this is that FICA itself does not contain an express cause of action for a private citizen to recover FICA taxes. *McDonald v. S. Farm Bureau Life Ins., Co.,* 291 F.3d 718, 722 (11th Cir. 2002) ("FICA itself is silent as to whether an employee can sue his employer for proper payment of FICA taxes."). The issue is whether FICA creates an implied private right of action such that an employee can sue his employer for an alleged violation of the Act. Courts use the four-part test in *Cort v. Ash,* 422 U.S. 66, 78–85 (1975), to determine if an implied private right of action exists. The factors include: (1) whether the plaintiff is one of the class for "whose especial benefit the statute was intended"; (2) whether there is any indication of legislative intent to create such a remedy; (3) whether implying a remedy is consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* The ultimate question "is one of legislative intent, not one of whether [the] Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross,* 442 U.S. at 578.

The two United States Court of Appeals decisions addressing this issue within the *Cort* framework have found no implied private right of action. *See Umland v. PLANCO Fin. Servs., Inc.,* 542 F.3d 59, 67 (3d Cir. 2008); *McDonald,* 291 F.3d at 726. In *McDonald v. Southern Farm Bureau Life Insurance, Co.,* a group of workers claiming misclassification as independent contractors sued their alleged employer for its failure to pay FICA taxes on their behalf. 291 F.3d at 721. The Eleventh

10

Circuit concluded that "[a]n analysis of the *Cort* factors makes it abundantly clear that no private cause of action may be implied by the language, structure, or the legislative history of FICA" and dismissed the workers' claim. *Id.* at 722, n. 1. In *Umland v. PLANCO Financial Services,* the Third Circuit adopted the reasoning in *McDonald* and held that no private right of action could be implied under FICA. 542 F.3d at 66–67. Numerous district courts have also followed *McDonald. See Powell v. Carey Int'l, Inc.,* 514 F. Supp. 2d 1302, 1323–24 (S.D. Fla. 2007); *Westfall v. Kendle Int'l, CPU, LLC,* 2007 WL 486606, at *17 (N.D. W.Va.); *Berger v. AXA Network, LLC,* 2003 WL 21530370, at *4 (N.D. Ill.); *Paukstis v. Kenwood Golf & Country Club,* 241 F. Supp. 2d 551, 560–61 (D. Md. 2003); *Salazar v. Brown,* 940 F. Supp. 160, 164–67 (W.D. Mich. 1996); *Spilky v. Helphand,* 1993 WL 159944, at *4–5 (S.D. N.Y.).

The third *Cort* factor is consistency with the underlying purpose of the legislative scheme. The Eleventh Circuit found in *McDonald* that this factor weighed against an implied private right of action. The court held that allowing litigants to sue privately under FICA would undermine the administrative procedures "that have been expressly created in order to assist workers who feel that they have been assessed improper FICA taxes." *Id.* The IRS has established procedures to address workers' claims based on misclassification of employment status. *See* I.R.C. § 7422. Workers may file a Form SS–8 to ask the IRS whether they should be classified as employees or independent contractors. *See* IRS, Form SS–8: Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding, OMB No. 1545–0004 (2009), *available at* http://www.irs.gov/pub/irs-pdf/fss8.pdf (last visited Jul. 10, 2017). Form 8919 is also available for workers who performed services as employees but were misclassified as independent contractors. *See* IRS, Form 8919: Uncollected Social Security and Medicare Tax on Wages, OMB No. 1545–0074 (2009), *available at* http://www.irs.gov/pub/irs-pdf/f8919.pdf (last visited Jul. 10, 2017). If an employer designates an employee as an independent contractor without a reasonable basis for doing so, the employer may be

liable to the government for employment taxes for that worker. *See* I.R.C. § 3509. The court in *Sanchez* found no inconsistency between this legislative scheme and recognizing a private right of action under FICA but did not discuss the administrative procedures available. 845 F. Supp. at 1182. The *McDonald* court found that allowing a private right of action would interfere with the consistency and effectiveness of the administrative procedures established by Congress. 291 F.3d at 725–26. This court is bound by the *McDonald* analysis. The third *Cort* factor weighs against finding a private right of action.

"When an employer misclassifies an employee as an independent contractor, should that employee have the right to sue his employer for failing to withhold and remit payroll taxes to the federal government or should the employee be limited to administrative remedies?" J. Aaron Ball, *The Sea Clammers Doctrine: Reeling In Private Employment Tax Claims In Worker Misclassification Cases,* 1 DePaul Bus. & Com. L.J. 215 (2003). The vast majority of cases that have decided this issue, as well as the Ball article, conclude that the exhaustive regulatory scheme embodied in the IRC, FICA and the SSA for resolution of employee classification claims forecloses a private right of action for such claims under either statute.

In *Salazar v. Brown,* 940 F. Supp. 160 (W.D. Mich. 1996), plaintiffs were agricultural workers who brought a claim against their employer under FICA, alleging that their employer had treated all workers as independent contractors, when in fact they were employees, issuing each worker a 1099 and not W–2 forms and not withholding any taxes nor withholding or paying any FICA taxes—the identical claim made by Plaintiffs (under RICO not FICA) in the instant case. The court held that no private right of action could be inferred under FICA for such claims and discussed the intricacies of the federal social welfare programs, concluding that employees who challenged their classification as employees or independent contractors were limited to pursuing claims through the administrative

scheme, which more than adequately protects both workers and employers who suffer losses as a result of a worker's misclassification. Outlining the administrative scheme, the court explained:

> The Federal Insurance Contributions Act (FICA) is but one part of the immensely complicated and interrelated system of statutes and regulations that make up the federal social welfare program. The Social Security Act, 42 U.S.C. §§ 401, *et seq.,* establishes a federal insurance scheme for the benefit of the aged, blind and disabled and their dependents. FICA is one of the taxing statutes designed to fund the program set up by the Social Security Act. Pursuant to the requirements of FICA, employees and their employers are liable for certain employment taxes to support the Social Security and the Medicare systems . . . . Federal law requires the employer to collect from each employee the FICA tax on wages by withholding the taxes from the employee's paycheck and periodically remitting them to the Internal Revenue Service. *See* 26 C.F.R. § 31–3102–1(a). Federal law also imposes upon the employer itself a tax, generally in an amount equal to the employee's tax. 26 U.S.C. § 3111(a). This tax is specifically denominated as an "excise tax" in the Act. *Id.* Consequently, an employer is required to withhold and remit the employee tax and to remit an equal amount as an employer excise tax on the covered wages of all persons who qualify as "employees," as that term is defined by FICA. 26 U.S.C. § 3121(d).
>
> Self-employed workers are covered by different provisions and are required to submit their own taxes to the IRS, subject to tax under a separate taxing provision, the Self Employed Contributions Act ("SECA"). 26 U.S.C. §§ 1401, 1402(b); 940 F.Supp. at 163. "The obligations imposed by FICA are administered by the Internal Revenue Service and are subject to numerous regulations, revenue rulings, interpretive rulings, and other administrative pronouncements. . . ." *Id.* Employer returns are subject to audit by the IRS for compliance with FICA and the IRS can assess the employer for non-compliance and the employer can contest the assessment in federal court. *Id.* Significantly, "a worker's entitlement to social security benefits does not depend on the actual payment of FICA taxes by the employer. FICA, by its terms, is a taxing statute, designed to fund the government's overall obligations

in the areas of old-age, disability, survivors, and Medicare insurance. The worker's entitlement to social security benefits is measured by the worker's actual receipt of covered wages, not on the reporting of income or the payment of FICA taxes." *Id.* at 163.

Workers who feel aggrieved by an employer's classification of their employment status can seek relief through the provisions of the SSA:  The Social Security Act creates an express administrative remedy for employees who contend that earnings have not been credited properly to their record for social security purposes.  An employee seeking to establish that he has earned wages that should be credited to his account for social security purposes must proceed administratively before the Secretary of Health and Human Services to correct the employee's earnings record within three years, three months and fifteen days of the year in question.  42 U.S.C. § 405(c) (4), (5). The agency will investigate the requested correction and make any necessary changes.  20 C.F.R. §§ 404.8020.823. If the worker is not satisfied with the Secretary's resolution of this issue, judicial review is available in the federal district court. 42 U.S.C. § 405(c)(8). The employer is neither a necessary or proper party in such proceedings, although the employer's records may be subpoenaed to provide evidence on the issue. 42 U.S.C. § 405(d).

Thus, the administrative scheme provides for an avenue of relief for aggrieved employees as well as an enforcement mechanism for the government, sometimes over-utilized by the IRS in its "pursuit and assessment of taxes and penalties . . . against employers who, in good faith, had misclassified their employees as independent contractors." *Id.* at 164 (citation omitted). Concluding that a private cause of action could not be inferred under FICA, the *Salazar* court concluded:

> As should be obvious from the foregoing analysis of FICA and the Social Security Act, neither the language nor the structure of either act even remotely evinces an intent to create a private cause of action as plaintiffs suggest. To the contrary, Congress has established a comprehensive administrative system to handle the very claims that plaintiffs seek, improperly, to bring in court. The Social Security Act creates an express administrative mechanism to investigate and decide issues concerning a worker's earnings record and his receipt of covered wages. 42 U.S.C. § 405(c)(4), (5). This mechanism is superintended by the Social Security Administration, the largest adjudicatory body on the face of the earth,

14

>and provides the safeguards of an adversary hearing before a professional Administrative Law Judge and eventual judicial review. Likewise, the enforcement of FICA tax obligations is entrusted to the IRS, which has administrative and judicial remedies directly against the employer and corporate officers. These statutes do not admit of a third approach, under which employees and employers would litigate benefit and taxation issues outside the statutory structure and without the presence of the very agencies created by Congress to administer this complicated system.

940 F. Supp. at 164. The court concluded that the Sixth Circuit, if presented with the issue, would refuse to find a private right of action where the statute does not expressly create one, given the extensive administrative scheme and availability of remedies. *Id.* at 166.

Courts which have concluded that FICA does not provide a private right action have also held that related non-statutory claims, based upon the same misclassification theory, are also foreclosed. Noting its agreement with the *Salazar* court that no private right of action was available to the plaintiffs under FICA, the court in *McElwee v. Wharton,* 19 F.Supp.2d 766, 771 (W.D. Mich. 1998) also foreclosed plaintiff's attempt to proceed on an equitable theory of restitution:

>Although Plaintiff wishes to proceed on an equitable theory of recovery rather than under a statute, the rationale in *Salazar* applies equally to a restitution claim. Namely, as in *Salazar,* there is no need to recognize a new equitable theory of recovery where the Plaintiff has available other remedies to redress his alleged losses. First, as noted in *Salazar,* the employee may pursue an administrative action under the Social Security Act inasmuch as the employee characterization affects rights to retirement benefits. *See, e.g., Jabar v. Secretary of Health & Human Services,* 855 F.2d 295 (6th Cir.1988). Second, the employee may urge the Internal Revenue Service to enforce the legal obligations of the employer to pay the taxes. Third, the employee who has mistakenly paid SECA taxes which were not due may administratively claim a refund from the Internal Revenue Service under 26 U.S.C. § 6511(a). If and when the claim for a refund is denied, the individual may sue for the refund pursuant to 28 U.S.C. § 1346(a). *See, e.g. David v. United States,* 551 F.Supp. 850, 852 (C.D.Cal.1982); *see also Ware v. United States,* 67 F.3d 574, 575 (6th Cir.1995). In light of the available legal remedies, there is no need to recognize an equitable right for restitution as to federal employment taxes.

19 F.Supp.2d at 771. Employing this same logic, several courts, following the conclusion that FICA does not provide a private right of action, have also dismissed associated state law claims (alleging, for example, breach of contract or unjust enrichment) finding that they are foreclosed by the comprehensive tax refund scheme. *See Crouch v. Guardian Angel Nursing, Inc.,* 2009 WL 3738095 at

* 5–7 (M.D. Tenn.) (recognizing that the Sixth Circuit has not been called upon to address the issue but agreeing with the overwhelming majority of courts that have found no available cause of action for misclassification claims, noting that "permitting [plaintiff's] suit to proceed ... would interfere with the IRS's administrative scheme for handling such disputes . . . . Individuals would have less incentive to follow IRS procedures if they could simply bring common-law claims for misclassification as an independent contractor in state court (or in federal court sitting in diversity.")) (quoting *Umland v. PLANCO Financial Services, Inc.,* 542 F.3d 59 (3d Cir. 2008) which held that plaintiff's unjust enrichment claim based on misclassification was preempted by federal tax law). *See also Oplchenski v. Parfums Givenchy, Inc.,* 2007 WL 495289 at * 3–4 (N.D. Ill.) (finding no private right of action under FICA and dismissing plaintiff's state wage law and federal common law breach of contract claims that were based on the misclassification claim).

### B. Plaintiff Seeks to Enforce FUTA Via An FLSA Action, When FUTA Does Not Provide a Private Cause of Action Itself.

The existence of an implied private right of action under FUTA has not been considered by any United States Court of Appeals. The analysis, however, follows the previous discussion of a private remedy under FICA. The expansive administrative scheme Congress established for tax-related disputes is inconsistent with an implied private right of action for employees to sue their putative employers for nonpayment of FUTA taxes. A number of federal district courts have held that no private cause of action exists for an employer's failure to pay unemployment taxes under FUTA. *See White v. White Rose Food,* 62 F.Supp.2d 878, 886–87 (E.D. N.Y. 1999) ("[A]s the [c]ourt finds that the tax statutes at issue are not intended for the benefit of the plaintiffs [but for the government's benefit], the [c]ourt holds that a private cause of action cannot exist under the provisions of FUTA."); *Bendsen v. George Weston Bakeries Dist.,* 2008 WL 4449435 at *4 (E.D. Mo.) (granting defendant's motion to dismiss plaintiff's FUTA and FICA claims because neither act creates a private right of action); *Andrews Transport, Inc. v. CNA Reinsurance Co., Ltd.,* 166 F.Supp.2d 516, 524 (N.D. Tex.

16

2001) (citing *White v. White Rose Food* for the statement that a private cause of action cannot exist under the provisions of FUTA), *overruled on other grounds,* 37 Fed. Appx. 87 (5th Cir. 2002); *Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596, 602 (S.D. Tex. 2010). This Court should find that there is no implied private right of action under FUTA.

The Plaintiffs claim that they "were not able to receive any stimulus money for coronavirus and we were unable to file for unemployment payments in which we both lost our jobs and caused one plaintiff to get into marriage problems . . . ." Whether they received stimulus money from the coronavirus or not has nothing to do with their claim under the FLSA and is not cognizable under that statute. The FUTA cannot be enforced in a private of action or pursuant to the FLSA. The fact that one had marriage problems has nothing to do with this case.

The Motion argues that it was filed to "let the Clerk's Office know that the Defendant [sic] did not fulfill his obligations under the agreement by not paying our FICA taxes into the pension fund" there is no pension fund mentioned in the settlement agreement, and no obligation in the agreement to pay FICA taxes or anything else. In fact, even when judgments are obtained for overtime, FICA taxes and other payroll taxes are not required to be paid. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013).

Respectfully submitted,

By: *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

Secondary E-Mails: esinclair@gkemploymentlaw.com
assistant@gkemploymentlaw.com

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2020, the foregoing was electronically filed with the Clerk of Court using the Florida E-Filing Portal, which will electronically serve a copy of the foregoing to: opposing counsel and counsel of the nonparties.

Respectfully submitted,

By: *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485